IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CALVIN D. ADAMS                                                              PLAINTIFF

vs.                                    Civil No. 4:07-cv-04030

MICHAEL J. ASTRUE                                         DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Calvin D. Adams ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 4).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff's applications for DIB and SSI now before this Court were filed on September 27, 2004. (Tr. 41A-41D, 278-280). These applications allege an onset date of May 5, 2004. *See id.* Plaintiff alleges he is disabled due to severe stomach and intestinal problems. (Tr. 11, 41A-41D, 67, 278-280). Plaintiff's applications were initially denied on January 28, 2005 and were denied again

---

[1] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

1

on reconsideration on May 6, 2005.  (Tr. 24-27, 281-282).  Plaintiff requested an administrative hearing which was held on June 8, 2006 in Texarkana, Arkansas.  (Tr. 286-320).  Plaintiff was present and was represented by an attorney, Charles Barnett, at this hearing.  *See id.*  Plaintiff, Plaintiff's sister (Tonya Swift), Plaintiff's girlfriend (Teresa Morgan), and Vocational Expert ("VE") Ken Waits testified at this hearing.  *See id.*  At the time of this hearing, Plaintiff was thirty-four years-old, which is classified as a "younger individual" under 20 C.F.R. § 404.1563(c) (2007).  At the time of the administrative hearing, Plaintiff had received his high school diploma and had attended, but had not completed, truck driving school.

On September 27, 2006, the ALJ entered an unfavorable decision denying Plaintiff's request for DIB and SSI.  (Tr. 8-16).  In this opinion, the ALJ determined that Plaintiff met the disability insurance requirements of the Act on his alleged onset date through the date of the ALJ's decision. (Tr. 15, Finding 1).  The ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") at any time relevant to his decision.  (Tr. 15, Finding 2).  The ALJ determined Plaintiff had a history of treatment for a duodenal[2] ulcer and gastritis[3].  (Tr. 15, Finding 3).  The ALJ determined that, although Plaintiff did have a history of treatment for these two impairments, Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulations No. 4 ("Listings").  *See id.*

The ALJ also evaluated Plaintiff's subjective complaints and determined Plaintiff's Residual

---

[2] "Duodenal" is defined as "the first division of the small intestine, about 25 cm or 12 fingerbreadths (hence the name) long . . . ." *PDR Medical Dictionary* 591 (3rd ed. 2006).

[3] "Gastritis" is defined as an "inflammation, especially mucosal, of the stomach." *PDR Medical Dictionary* 790 (3rd ed. 2006).

Functional Capacity ("RFC"). (Tr. 15, Findings 4, 7). In evaluating Plaintiff's subjective complaints, the ALJ determined that Plaintiff's testimony was not "borne out by the overall record" and was "found not to be fully credible." (Tr. 15, Finding 4). The ALJ based this determination on several different findings, including the following: (1) Plaintiff's medical records, including Plaintiff's medical records from his treating physician, were not consistent with the level of pain Plaintiff alleged; (2) Plaintiff failed to be examined by a physician from November of 2004 until the date of the ALJ's decision, which was inconsistent with his complaints of disabling pain; and (3) Plaintiff was not taking any medications at the time of the administrative hearing, which was also inconsistent with his complaints of disabling pain. (Tr. 13-14). Based upon these findings, the ALJ determined Plaintiff retained the RFC to perform light work. (Tr. 15, Finding 7). According to the Social Security Regulations ("SSRs"), "light work" includes the following:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567 (2007).

The ALJ also determined that Plaintiff could not perform his Past Relevant Work ("PRW") but could perform work that exists in significant numbers in the economy. (Tr. 15-16, Findings 6, 11). The VE testified at the administrative hearing regarding this issue. (Tr. 315-320). The VE testified that Plaintiff's PRW included work as an Industrial Cleaner (medium, unskilled), Small Products Assembler I (light, unskilled), Poultry Farm Laborer (medium, unskilled), Livestock Yard Attendant (heavy, unskilled), and Poultry Hanger (medium, unskilled). (Tr. 316). The ALJ

3

determined, based upon the VE's testimony and in light of Plaintiff's RFC and other limitations, that Plaintiff could not perform his PRW as a farm laborer.[4]  (Tr. 15, Finding 6).

The VE, however, also testified at the hearing that even though Plaintiff could not perform this PRW, he could perform work that exists in significant numbers in the national economy.  (Tr. 15-16, Finding 11).  Specifically, the VE testified that, considering Plaintiff's age, education, vocational background, RFC, and other limitations, Plaintiff could perform work as a small products assembler (light or sedentary, unskilled) or as an inspector or sorter (light or sedentary, unskilled).  (Tr. 317-318).  The VE testified that there are 7,800 jobs as a small products assembler (light) in Arkansas and 454,000 in the nation and 1,000 jobs as a small products assembler (sedentary) in Arkansas and 59,000 in the nation.  *See id.*  The VE also testified that there are 1,700 jobs as an inspector or sorter (light) in Arkansas and 140,000 in the nation and 100 jobs as an inspector or sorter (sedentary) in Arkansas and 14,000 in the nation.  *See id.*  The ALJ determined, based upon this testimony and his review of the evidence in the record, that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time through the date of his decision.  (Tr. 16, Finding 12).

On March 15, 2007, the Appeals Council declined to review the ALJ's September 27, 2006, hearing decision.  (Tr. 3-5).  Subsequently, Plaintiff filed the present action.  (Doc. No. 1).  The parties consented to the jurisdiction of this Court on April 4, 2007.  (Doc. No. 4).  Plaintiff and Defendant have both filed appeal briefs.  (Doc. Nos. 7-8).  This case is now ready for decision.

---

[4] The ALJ did not explicitly find that Plaintiff could not perform his other PRW (his work that was not related to his PRW as a "farm laborer").  However, because the ALJ found that Plaintiff was not disabled at Step Five of the Analysis, this finding did not impact the ALJ's disability determination.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

### 3. Discussion:

Plaintiff brings the present appeal arguing that the ALJ erred by (1) improperly evaluating his subjective complaints; (2) finding he had the RFC for light work; (3) improperly relying on the VE's testimony; and (4) failing to support his decision with substantial evidence. (Doc. No. 7, Pages 1-4). Plaintiff's appeal brief, however, focuses almost entirely upon his third claim: whether the ALJ properly relied upon the testimony of the VE. *See id.* Specifically, Plaintiff claims the ALJ erred by basing his disability determination upon the VE's response to a hypothetical that he claims was improperly phrased. *See id.* Plaintiff argues that, instead of relying upon the VE's response to the improperly-phrased hypothetical, the ALJ should have relied upon the VE's response to the properly-phrased hypothetical that included all of Plaintiff's limitations, including the fact that Plaintiff was

required to go to the bathroom an average of seven or eight times a day. *See id.*

In response, Defendant argues that Plaintiff's first, second, and fourth claims are too vague to be analyzed by this Court. (Doc. No. 8, Page 2). Defendant argues that those three claims should be rejected "out of hand" because they are not supported by any analysis of "the relevant law or facts." *See id.* Defendant also argues that Plaintiff's third claim, regarding the testimony of the VE, is without merit. *See id.* at 3. Defendant argues that the ALJ incorporated all of Plaintiff's credible limitations in his hypothetical to the VE. *See id.* Defendant argues that Plaintiff's one claimed limitation that was not included in the hypothetical to the VE –that Plaintiff was required to go to the bathroom seven to eight times during an eight-hour period–is not supported by the evidence. *See id.* at 5. Defendant argues that the medical records from Dr. Tompkins, Plaintiff's treating physician, actually contradict Plaintiff's claim that he was required to use the restroom on a regular basis. *See id.* Defendant argues that Dr. Tompkins dismissed Plaintiff from treatment with "no limitations" and that there is no mention in Plaintiff's medical records that he was required to take excessive bathroom breaks during the day. *See id.*

**A. Plaintiff's First, Second, and Fourth Claims**

Plaintiff makes three very broad claims (first, second, and fourth) in his four-page brief that he did not support with any reference to the relevant law or facts in the record. (Doc. No. 7). In raising an issue on appeal, a plaintiff is required to provide *at least some* analysis or argument supporting his or her claim that the ALJ erred. *See Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005) (rejecting a claimant's argument "out of hand" because the claimant provided "no analysis of the relevant law or facts" regarding that issue). Plaintiff has not provided any analysis of the relevant law or facts supporting these three arguments; and because Plaintiff provided no facts or law

7

to support these arguments and has provided this court with no basis from which to analyze his claims, this Court is not required to address, and will not address, these three arguments directly in this opinion.[5]

### B. Plaintiff's Third Claim: ALJ's Reliance on the VE's Testimony

With his third claim, Plaintiff argues the ALJ improperly based his disability determination upon the VE's response to the ALJ's first hypothetical, which he claims was an "improperly phrased" hypothetical. (Doc. No. 7, Pages 1-4). Instead of relying upon this first hypothetical, Plaintiff claims that the ALJ should have relied upon the VE's response to the second hypothetical, the "properly-phrased hypothetical" that included all of Plaintiff's impairments, including the limitation caused by his need to take frequent bathroom breaks. *See id.* Plaintiff argues that, if the ALJ would have relied upon the VE's response to this second hypothetical, the VE would have found that Plaintiff was disabled. *See id.* In response, Defendant argues that the ALJ included all of Plaintiff's limitations that he found credible in his first hypothetical to the VE and that the ALJ properly relied upon the VE's response to his first hypothetical. (Doc. No. 8, Pages 2-6).

In general, a vocational expert's testimony in response to a properly-phrased hypothetical that includes all the limitations the ALJ finds credible can constitute substantial evidence in support of an ALJ's decision. *See Cox v. Astrue,* 495 F.3d 614, 620 (8th Cir. 2007) (citing *Porch v. Chater,* 115 F.3d 567, 572 (8th Cir. 1997)); *Strongson v. Barnhart,* 361 F.3d 1066, 1072-73 (8th Cir. 2004) (holding that where an ALJ's hypothetical to a vocational expert includes all the impairments the ALJ finds are credible, the vocational expert's testimony in response to that hypothetical constitutes

---

[5] These arguments will, however, be addressed incidentally in this opinion in this Court's review of Plaintiff's third claim.

substantial evidence in support of an ALJ's disability determination). If, however, an ALJ does not include all a claimant's credible limitations in his or her hypothetical to the vocational expert, then the vocational expert's response to that hypothetical cannot constitute substantial evidence in support of an ALJ's disability determination. *See Cox,* 495 F.3d at 620.

In the present action, at the administrative hearing, the ALJ presented two hypothetical questions to VE regarding Plaintiff's ability to perform work that exists in significant numbers in the economy. (Tr. 315-320). In his first hypothetical to the VE, the ALJ included a number of different limitations, including the fact that the hypothetical individual retained the RFC to perform light work. *See id.* The ALJ, however, did not include in this hypothetical any requirement that the individual be allowed excessive restroom breaks throughout the day. *See id.* The VE testified in response to this first hypothetical and stated that, with these limitations, a hypothetical individual would be able to perform several jobs that exist in significant numbers in the national economy. *See id.*

In his second hypothetical to the VE, the ALJ included the same limitations that were included in his first hypothetical but also included one additional limitation. *See id.* Specifically, the ALJ stated that the hypothetical individual was an individual who "would have to interrupt his work up to seven or eight times for eight hours to get to the bathroom." *See id.* The VE testified that, with that additional limitation, the hypothetical individual would not be able to perform *any work* that exists in significant numbers in the national economy. *See id.* The ALJ did not, however, find that Plaintiff's frequent use of the bathroom was a credible limitation; and therefore, the ALJ did not rely upon the VE's response to the second hypothetical. Instead, based upon the VE's testimony in response to the first hypothetical, the ALJ determined that Plaintiff could perform work

that existed in significant numbers in the national economy and was, therefore, not disabled. (Tr. 16, Finding 12).

The ALJ determined that Plaintiff's claim that he must take frequent bathroom breaks was not credible based upon his review of the record as a whole. (Tr. 12-16). The ALJ's review included Plaintiff's medical records, Plaintiff's subjective complaints, and the testimony of the two witnesses. *See id.* This Court will analyze Plaintiff's medical records, Plaintiff's subjective complaints, and the testimony of these two witnesses, to determine whether the ALJ's disability determination is supported by substantial evidence on the record as a whole.

### (1) Plaintiff's Medical Records

Plaintiff's medical records date from May 14, 2004, shortly after his alleged onset date, until November 18, 2004. (Tr. 76-276). According to these records, Plaintiff was admitted to Christus St. Michael's Hospital and underwent a laparotomy[6] on May 14, 2004. (Tr. 95-227, 229, 237-273). Dr. William C. Tompkins performed this procedure. *See id.* This laparotomy revealed a duodenal perforation and an ileal[7] perforation. *See id.* Dr. Tompkins closed the duodenal perforation, resected[8] the distal ileum, and created an ileostomy[9]. *See id.* On June 16, 2004, Plaintiff underwent further surgery by Dr. Tompkins for irrigation of a deep hole in the lower portion of his abdomen

---

[6] A "laparotomy" is defined as an "incision into the loin." *PDR Medical Dictionary* 1048 (3rd ed. 2006).

[7] The "ileum" is defined as "the third and longest portion of the small intestine, about 12 feet in length in humans . . . ." *PDR Medical Dictionary* 946 (3rd ed. 2006).

[8] To "resect" is "to cut off or remove, especially to cut off the articular ends of one or both bones forming a joint." *PDR Medical Dictionary* 1673 (3rd ed. 2006).

[9] An "illestomy" is an "[e]stablishment of a fistual through which the ileum discharged directly to the outside of the body." *PDR Medical Dictionary* 946 (3rd ed. 2006).

with a large amount of hematoma[10]. (Tr. 228). On June 23, 2004, Plaintiff was finally discharged from the hospital. (Tr. 230).

On July 6, 2004, Plaintiff had a follow-up appointment where his doctor reported that he was "doing quite well." (Tr. 276). On August 9, 2004, Plaintiff had a second follow-up appointment where his doctor noted that Plaintiff's wounds were "almost completely healed" and that Plaintiff was doing "fairly well." *See id.* On September 13, 2004, Plaintiff was admitted to the hospital again for what appears to be another follow-up appointment. (Tr. 90-94, 275). On that date, Plaintiff was doing well, and a CT scan was reported on September 13, 2004 to be "fairly normal." *See id.* On September 28, 2004, Plaintiff was admitted to the hospital again; and pursuant to Plaintiff's request, Dr. Tompkins closed Plaintiff's ileostomy. (Tr. 76-89, 231-236). On October 4, 2004, Plaintiff was discharged after this procedure in an "improved" and "stable" condition. *See id.*

Plaintiff continued to do well, and on October 21, 2004, Dr. Tompkins reported Plaintiff was having normal bowel movements. (Tr. 275). Plaintiff also reported having "no complaints" on that date, and Dr. Tompkins noted that Plaintiff's wound was "well healed" and Plaintiff's staples had been removed. *See id.* On November 18, 2004, Dr. Tompkins reported that Plaintiff was "doing well" and had "normal bowel movements." (Tr. 274). *Dr. Tompkins also "dismissed" Plaintiff with "no limitations."* (Tr. 274). There is no record of Plaintiff seeking any further medical care after November 18, 2004.[11] *See id.*

---

[10] A "hematoma" is defined as "a localized mass of extravasated blood that is relatively or completely confined within an organ or tissue, a space, or a potential space; the blood is usually clotted (or partly clotted), and, depending on its duration, may manifest various degrees of organization and decoloration." *PDR Medical Dictionary* 863 (3rd ed. 2006).

[11] Plaintiff contends that a lack of financial resources prevented him from seeking any follow-up medical care after November of 2004 (Tr. 297), but there is no credible evidence in the record that Plaintiff ever attempted to return to see Dr. Tompkins and was denied care or that Plaintiff ever attempted to seek low-cost or no-cost medical care from clinics or hospitals. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992); *Goff v. Barnhart,* 421

Notably, none of Plaintiff's medical records–dated from May 14, 2004 until November 18, 2004– indicate that Plaintiff was required to take excessive bathroom breaks throughout the day. (Tr. 76-276). The medical records also do not indicate that Plaintiff ever complained to his physician about his excessive use of the bathroom, and Dr. Tompkins released Plaintiff on November 18, 2004 with *no limitations*. *See id.* Thus, Plaintiff's medical records clearly do not support his claim that he is disabled because he has to "interrupt his work up to seven or eight times for eight hours to go to the bathroom." (Tr. 318).

### (2) Plaintiff's Subjective Complaints

Plaintiff claimed at the administrative hearing that he had to take frequent bathroom breaks while working. (Tr. 295). The ALJ discounted these subjective complaints and found that they were "not borne out by the overall record" and were "not found to be fully credible." (Tr. 15, Finding 4). The ALJ based this credibility determination upon his analysis of the five *Polaski* factors. (Tr. 11-15). Specifically, the ALJ determined Plaintiff's subjective complaints should be discounted based upon the following findings: (1) Plaintiff's medical records were not consistent with Plaintiff's claimed limitations; (2) Plaintiff failed to be examined by a physician from November of 2004 until the date of the ALJ's decision, which was inconsistent with his claimed limitations; and (3) Plaintiff was not taking any medications at the time of the hearing, which was also inconsistent with his claimed limitations. (Tr. 13-14).

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and

---

F.3d 785, 790 (8th Cir. 2005). Thus, Plaintiff has not provided sufficient evidence supporting his claimed reason for failing to seek additional medical care.

12

20 C.F.R. § 416.929.[12] *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322. The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *See id.* The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's subjective complaints, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity.

---

[12] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

*See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, the ALJ provided several valid reasons for discounting Plaintiff's subjective complaints. First, the ALJ noted that Plaintiff's medical records were not consistent with his claimed limitations. (Tr. 13). Dr. Tompkins, Plaintiff's treating physician, dismissed Plaintiff from treatment in November of 2004 and placed *no restrictions* or other limitations on his ability to perform any type of work. (Tr. 13). Second, the ALJ noted that Plaintiff's medical records were not consistent with Plaintiff's claimed functional limitations. (Tr. 13). Even though Plaintiff claimed he could not lift and carry heavy objects, Plaintiff's medical records did not indicate that Plaintiff has any restrictions at all on his ability to lift and carry objects. *See id.*

Third, the ALJ noted that Plaintiff's failure to take medication, prescription or otherwise, did not support his claimed limitations. (Tr. 13-14). Plaintiff even admitted at the administrative hearing that he was not taking any medications, and his failure indicates that his limitations were not as severe as he alleged. *See id.* Because the ALJ's credibility determination is supported by several valid findings, this Court should affirm the ALJ's credibility determination. *See Woodruff v. Astrue,* No. 06-1818, 2007 WL 913854, at *1 (8th Cir. March 28, 2007). Accordingly, the ALJ did not err in discounting Plaintiff's claim that he was required to take frequent bathroom breaks in order to perform substantial gainful activity.

### (3) Testimony of Witnesses in Support of Plaintiff

In evaluating Plaintiff's limitations, the ALJ also evaluated the testimony of Plaintiff's girlfriend, Teresa Morgan, and Plaintiff's sister, Tonya Swift. (Tr. 14). Both witnesses testified that Plaintiff has to take constant bathroom breaks throughout the day. (Tr. 309-315). The ALJ discounted the testimony from both of these individuals. (Tr. 14). The ALJ discounted this

testimony because it was based "upon uncritical acceptance of the claimant's complaints and, to some degree . . . motivated by a desire to see him [Plaintiff] obtain benefits." (Tr. 14). The ALJ also stated that "[t]estimony of family members or friends must be given consideration, but that testimony need not be believed as credible." *See id.*

In evaluating the testimony of a witness testifying on a claimant's behalf, an ALJ is not required to accept as true everything that the witness claims to be true. *See Brown v. Chater,* 87 F.3d 963, 965-66 (8th Cir. 1996) (finding that an ALJ may discount a witness's testimony if that testimony is "suspect"); *Lawrence v. Chater,* 107 F.3d 674, 676-77 (8th Cir. 1997) (finding that an ALJ may discount a witness's testimony if that witness is motivated by a desire to see the claimant obtain benefits).

Both of Plaintiff's witnesses–his girlfriend and sister–appear to have been motivated by a desire to see Plaintiff obtain benefits. Plaintiff's girlfriend, Teresa Morgan, had been financially supporting Plaintiff and would have financially gained by Plaintiff's ability to obtain benefits. (Tr. 14, 312-315). Specifically, she testified at the administrative hearing that she provided Plaintiff's cigarettes, food, and housing. (Tr. 312-315). Likewise, the testimony of Plaintiff's sister, Tonya Swift, also appears to be based, at least to some degree, on her desire to see her brother, the claimant, obtain benefits. (Tr. 308-312).

Based upon this Court's review of the evidence submitted in this case, including Plaintiff's medical records, subjective complaints, and offered testimony, this Court finds that Plaintiff has not established that he is required to "interrupt his work up to seven or eight times for eight hours to get to the bathroom." Thus, the ALJ did not err in relying upon the VE's response to the ALJ's hypothetical that did not include that impairment as a stated impairment. *See Strongson v. Barnhart,*

15

361 F.3d at 1072-73.

**4. Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 20th day of December, 2007.**

/s/   Barry A. Bryant
Honorable Barry A. Bryant
United States Magistrate Judge